UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

JEANNE M. HERMAN,

                     Plaintiff,

          v.

NATIONAL ENTERPRISE SYSTEMS, INC.,
MICHAEL DOE and RAYMOND DOE,

                  Defendants.

─────────────────────────────────

|  |  |
|---|---|
| | **REPORT**<br>**and**<br>**RECOMMENDATION**<br>---------------------------<br>**DECISION**<br>**and**<br>**ORDER**<br><br>**07-CV-337S(F)** |

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER
                          Attorneys for Plaintiff
                          KENNETH R. HILLER,
                          AMANDA R. JORDAN, of Counsel
                          6000 North Bailey Avenue, Suite 1A
                          Amherst, New York 14226

                          SURDYK, DOWD & TURNER CO., L.P.A.
                          Attorneys for Defendant National Enterprise Systems, Inc.
                          BOYD W. GENTRY,
                          MELANIE L. FRANKEL, of Counsel
                          Kettering Tower
                          40 N. Main Street, Suite 1610
                          Dayton, Ohio 45423

                          LUSTIG & BROWN, LLP
                          Attorneys for Defendant National Enterprise Systems, Inc.
                          TROY S. FLASCHER, of Counsel
                          400 Essjay Drive, Suite 200
                          Buffalo, New York 14221-8228

## JURISDICTION

     This case was referred to the undersigned by the Hon. William M. Skretny on

July 9, 2007 for all pretrial matters.  (Doc. No. 7).  The matter is presently before the

court on Defendant National Enterprise Systems, Inc.'s motion, filed on December 7,

2007, to file an amended answer, (Doc. No. 14), and Plaintiff's Cross-Motion, filed on

January 1, 2008, to Strike Affirmative Defenses in Defendant's Answer.  (Doc. No. 16).[1]

## BACKGROUND and FACTS [2]

Plaintiff Jeanne M. Herman ("Plaintiff" or "Herman"), commenced this action on

May 24, 2007, seeking compensatory and punitive damages, alleging that National

Enterprise Systems, Inc. ("Defendant" or "NES"), Michael Doe, and Raymond Doe[3]

violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA" or

"the Act")*,* specifically §§ 1692d, d(2), d(5), d(6), 1692e, e(2), e(4), e(5), e(7), e(10),

e(14), 1692f, f(1), f(2), f(4) and New York State common law of intentional infliction of

emotional distress.  In particular, Plaintiff asserts that Defendant, through its collectors,

Michael Doe and Raymond Doe, harassed Plaintiff, intending to cause Plaintiff

emotional distress, in an effort to obtain from Plaintiff payment on a $1,600 debt to a

non-party creditor incurred by Plaintiff's son, Michael G. Herman, Jr. ("Michael

Herman"), who, during the time period in question, was in military service in Iraq, and

that Defendant made unauthorized withdrawals from Michael Herman's bank account.

Complaint ¶¶ 7, 10-11, 15-55.

---

[1] Whereas Defendant National Enterprise Systems, Inc.'s motion to amend seeks non-dispositive relief, Plaintiff's Cross-Motion seeks dispositive relief, the court addresses both motions in this combined Decision and Order (Defendant's Motion) and Report and Recommendation (Plaintiff's Cross-Motion) in the interest of efficiency.

[2] Taken from the pleadings and papers filed in this action to date.

[3] Michael Doe is a fictitious name for an NES employee who identified himself to Plaintiff as Michael Anderson.  Complaint ¶ 8.  Similarly, Raymond Doe is a fictitious name for an NES employee who identified himself to Plaintiff as Raymond Parker.  Complaint ¶ 9.  As Plaintiff has not served these persons in their correct name, they are not parties, and the Answer was filed only on behalf of NES.

Upon Michael Herman's default on the subject debt, the non-party creditor, Citibank employed NES to collect the subject debt.  Complaint ¶¶ 18-19, 42; Answer ¶¶ 18-19.  Plaintiff alleges that beginning in December  2006, NES called Plaintiff multiple times almost every day attempting to collect the subject debt.  Complaint ¶ 22.  Plaintiff alleges that during virtually every telephone conversation with Defendant, particularly in response to Plaintiff's refusal to pay the subject debt, Michael Doe remarked, "What kind of mother are you?"  Complaint ¶ 26.  According to Plaintiff, in December of 2006, while conversing with an NES debt collector on the telephone, such employee, in response to Plaintiff informing him that Michael Herman was then on military duty in Iraq, stated, "What's he doing over there, shooting people?"  Complaint ¶ 27.  Plaintiff asserts this comment caused her to call NES and request that they not call her anymore regarding the subject debt.  Complaint ¶ 28.  Plaintiff maintains that Defendant then discontinued calling Plaintiff for approximately one month, after which time NES, through Michael and Raymond Doe, resumed calling her as frequently as they had before.  Complaint ¶ 29.

According to Plaintiff, in April 2007, NES's collector, Michael Doe, told Plaintiff that a civil lawsuit had been commenced in Texas against Michael Herman, but no reply to the suit had been made.  Complaint ¶ 30.  During the same conversation, Plaintiff alleges that Michael Doe told Plaintiff if she did not pay $1,600 owed on the debt, her son would need a good lawyer and that the debt would increase to over $5,000, including lawyer fees, by the time Michael Herman returned from Iraq.  Complaint ¶ 32.  Also, during a phone call which took place in April 2007, Plaintiff asserts that Michael Doe told her she would not see her son upon his return from Iraq because he would be

arrested upon setting foot on American soil; that the military did not look favorably on servicemen who did not pay their debts; that her son's pay would be reduced as a result and he would be demoted; and that Michael Herman would be dishonorably discharged unless Plaintiff paid NES $2,400 immediately.  Complaint ¶ 31.

Plaintiff alleges that, as a result of these conversations with Defendant, she agreed to pay $1600 to settle the subject debt.  Complaint ¶ 33.  Defendant admits that Plaintiff agreed to pay $1250 to settle the account.[4]  Answer ¶ 33.  Plaintiff provided NES with Michael Herman's bank account information to make monthly deductions of $300 from Michael Herman's bank account to pay down the subject debt in installments, and Plaintiff alleges it was agreed by Defendant that the first payment was to be deducted on May 1, 2007.  Complaint ¶ 34.  Defendant contends the agreement was to pay $300 on April 24, 2007 and $950 on April 30, 2007.  Answer ¶ 34. Defendant withdrew $300 from Michael Herman's Account on April 24, 2007, and attempted to withdraw $950 on April 30, 2007 from Michael's account, but the latter withdrawal did not occur because there were insufficient funds in the account. Complaint ¶¶ 35-36; Answer ¶¶ 35-36.  Plaintiff alleges that Defendant was paid $950 from Michael Herman's[5] account on May 1, 2007.  Complaint ¶ 37.

Plaintiff contends that her son, Michael, telephoned her from Iraq on May 3, 2007, "in tears," telling Plaintiff that his bank account had been "cleaned out," that he

---

[4] The record does not explain why Defendant admits Plaintiff agreed to pay $1250 instead of the $1600 Plaintiff alleges, Complaint ¶ 33, she agreed to pay Defendant.

[5] The court considers Plaintiff's reference, Complaint ¶ 37, to Michael G. Anderson's bank account as a typographical error; the court presumes Plaintiff intended to refer to Michael Herman's bank account.

had to borrow money to call her on the telephone, that he could not afford a pack of cigarettes, and that he could not even buy her a Mother's Day present.  Complaint ¶ 38. Plaintiff contacted Michael's bank and was informed that NES had withdrawn the money from Michael Herman's account.  Complaint ¶ 39.   Plaintiff requested that Michael Herman's bank stop NES from withdrawing more money from the account; in response, the bank, according to Plaintiff, informed Plaintiff that NES was known to use different names to make withdrawals from soldiers' bank accounts when similar attempts to block NES's access to such accounts were made, and advised Plaintiff to change the entire bank account number to Michael's account.  Complaint ¶ 40.  As a result, Plaintiff asserts that Michael Herman's bank account number was changed, and the withdrawals made by NES were reversed.  Complaint ¶ 41.  Subsequently, on May 7, 2007, Plaintiff claims she received a phone call from an unidentified NES representative, claiming to be the creditor, Citibank, threatening Plaintiff if she did not immediately pay $1,250, that she would be sued because she stopped payment on the checks.  Complaint ¶¶ 42, 43.  Plaintiff replied she would not pay and that she retained a lawyer, to which the  NES caller allegedly replied, "That's good, because you are going to need one."  Complaint ¶ 42.

On May 17, 2007, Plaintiff received a telephone call from Raymond Doe who, Plaintiff asserts, falsely represented that he spoke to Michael Herman on April 20, 2007, on which date, according to Doe, Michael Herman authorized the April 24, 2007, April 30, 2007, and May 1, 2007 withdrawals from Michael Herman's account. Complaint ¶ 46.  Raymond Doe also told Plaintiff that the civil lawsuit against her son was ongoing.  *Id.*   Plaintiff alleges Defendant never sent Plaintiff or Michael Herman

written notification prior to withdrawing or attempting to withdraw money from Michael

Herman's bank account, Complaint ¶ 50, and that neither Defendant nor the creditor

had commenced a civil suit against Michael Herman with respect to the subject debt.

Complaint ¶ 54.

On July 5, 2007, NES served its answer asserting 10 affirmative defenses.  (Doc.

No. 4) ("the Answer").  By papers filed December 7, 2007, NES moved to amend the

answer.  (Doc. No. 14) ("Defendant's Motion").  In support of Defendant's Motion, NES

filed the Affidavit of Troy S. Flascher, Esq. (Doc. No. 14) ("Flascher Affidavit") and a

proposed amended answer.  (Doc. No. 14) (Flascher Aff. Exh. A) ("Proposed Amended

Answer").  In particular, Defendant's Proposed Amended Answer proposed to add three

affirmative defenses, *i.e.*, that Plaintiff's claims are barred by the principles of (i)

merger, (ii) accord and satisfaction, (iii) laches,[6] (iv) estoppel, and (v) waiver.  Proposed

Amended Answer  ¶¶ 11-12.

By papers filed January 2, 2008, Plaintiff filed a Cross-Motion to Strike

Affirmative Defenses asserted in the Answer (Doc. No. 16) ("Plaintiff's Cross-Motion"),

specifically paragraphs 75, 76, 78, 79, 82, 83 and 84, attached to which is Plaintiff's

Memorandum of Law in Opposition to Defendants' Motion, and in Support of Plaintiff's

Cross-Motion.  (Doc. No. 16) ("Plaintiff's Memorandum").  On January 7, 2008,

Defendant filed a Memorandum of Law in Opposition to Plaintiff's Cross-Motion. (Doc.

No. 17) ("Defendant's Memorandum").  Oral argument was deemed unnecessary.

---

[6] Although Defendant included the doctrine of laches as an affirmative defense to be added, Proposed Amended Answer ¶ 12, Defendant has since, Defendant's Memorandum at 7, voluntarily withdrawn the proposed laches defense.  Therefore, Plaintiff's Cross-Motion, directed to this affirmative defense, should be DISMISSED as moot.

Based on the following, Defendant's Motion is GRANTED, in part; DENIED, in part; and DISMISSED as moot, in part.  Plaintiff's Cross-Motion should be GRANTED, in part, and DENIED, in part, and DISMISSED as moot, in part.


## DISCUSSION

### I.   Defendant's Request to Add Affirmative Defenses

As stated, Background and Facts, *supra,* at 6, Defendant moves, pursuant to Fed.R.Civ.P. 15(a), for leave to amend the Answer to include four additional affirmative defenses.  Defendant's Motion ¶ 5.  Specifically, as noted, Background and Facts, *supra*, at 6, NES seeks to add the affirmative defenses of merger, accord and satisfaction, estoppel, and waiver.  Proposed Amended Answer ¶¶ 11-12.  Plaintiff argues that amending the Answer to include these additional defenses would be futile, improper, and unsupported by law, as such defenses, according to Plaintiff, are defenses arising under state law and, as such, inapplicable to claims pursuant to the FDCPA, and are irrelevant to Plaintiff's state law claim based on intentional tort. Plaintiff's Memorandum ¶¶ 7, 9.  Specifically, as regards Plaintiff's state law intentional infliction of emotional distress claim, Plaintiff maintains that the existence of any settlement agreement, potentially involving theories of merger, accord and satisfaction, estoppel or waiver, relating to Defendant's effort to collect Plaintiff's son's debt, even if established at trial, is irrelevant to whether NES intentionally inflicted emotional distress on Plaintiff by harassing her as Plaintiff alleges in her second cause of action.  Plaintiff's Memorandum ¶ 7.  Notably, Defendant does not explicitly allege that there was a

settlement covering all of Plaintiff's claims with Defendants.

Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Burns v. Imagine Films Entertainment, Inc.*, 165 F.R.D. 381, 384 (W.D.N.Y. 1996) (quoting Fed.R.Civ.P. 15(a)). Therefore, "an amended pleading may be filed pursuant to Rule 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile." *Warren v. Goord,* 2006 WL 1582385, at * 7 (W.D.N.Y. May 26, 2006).  A motion for leave to amend should be granted unless it is shown that significant burdens on discovery will ensue or that trial will be significantly delayed.  *Id.*

"Whether to permit amendment is committed to the discretion of the court, however, it is an abuse of discretion to deny leave to amend if the denial is not based on valid grounds." *Burns*, 165 F.R.D. at 384 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321 (1971); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1335 (2d Cir. 1992); and *Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902 (2d Cir. 1977)).  "In deciding whether to permit amendment, the court may consider factors such as undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, undue prejudice to the opposing party, failure to cure deficiencies by previous amendments, or futility of amendment." *Burns, supra,* at 385 (citing *Foman, supra,* at 182; and *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 46 (2d Cir. 1983)); *see also Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1197 n. 18 (3d Cir. 1994) (citing 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.08[2], at 15-49 (2d ed. 1993) (court should not grant leave to amend if opposing party will be prejudiced or trial

8

of issues are "unduly delayed" as a result)).   Leave to amend a pleading will be denied

when an amendment is offered in bad faith, would cause undue delay or prejudice, or

would be futile.   *Burns,* 165 F.R.D. at 385 (citing cases); *Foman, supra,* at 182;

*Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647 (2d Cir. 1987); *Fiske v.*

*Church of St. Mary of the Angels,* 802 F.Supp. 872, 877 (W.D.N.Y. 1992).   In

determining the futility of a claim, the court applies the same standards that govern a

motion to dismiss under Fed.R.Civ.P. 12(b)(6).   *Warren,* 2006 WL1582385, at * 7.   "An

amendment to a pleading is futile if it could not withstand a motion to dismiss under

Rule 12(b)(6)."   *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d

83, 88 (2d Cir. 2002).   *See also Credit Suisse First Boston, LLC v. Intershop Comm.*

*AG*, 407 F.Supp.2d 541, 551 (S.D.N.Y. 2006) (amendment futile where defense would

be "insufficient as a matter of law.").

  "'The basic concept of an affirmative defense is an admission of the facts alleged

in the complaint, coupled with the assertion of some other reason defendant is not

liable.'" *Harrington v. Educ. Mgmt. Corp.*, 2002 WL 1009463, at *2 (S.D.N.Y. May 17,

2002) (quoting *Board of Governors of Wayne State Univ. v. Bajkowski*, 1987 WL

12911, at *1 (N.D.Ill. June 19, 1987)).   Defendant does not specifically explain whether

Defendant's proposed affirmative defenses all arise under state common law; in

particular, Defendant does not contend any of the proposed defenses are specified in

the FDCPA, nor does NES cite to federal common law to provide the elements of its

proposed affirmative defenses.   For example, although NES does not attempt to define

its proposed merger defense, at common law the defense relates primarily to contract

disputes where a contract subsumes another contract or where the rights of a creditor

and debtor unite with the result that the underlying debt is extinguished.  Black's Law

Dictionary 1002-1003 (7th ed. 1999); *see also* 50 CJS Judgments § 704 (2008) ("merger

[is] . . . based on the principle that a superior right covers or absorbs an inferior right"

and used to prevent "the recovery of two judgments against the same person for one

debt.").  Likewise, the affirmative defense of accord and satisfaction involves the

substitution of a new agreement to pay a debt for an existing one, often as part of a

settlement of a cause of action based on the debt.  Black's Law Dictionary at 17; *see*

*also West Seventy-Ninth Street Assocs. v. Lemi, Inc.*, 542 N.Y.S.2d 942, 947 (N.Y. Civ.

Ct. 1989) ("An essential component of an accord and satisfaction is a clear

manifestation of intent by the debtor tendering less than full payment of a disputed

unliquidated debt, that the payment has been sent in full satisfaction of the disputed

claim.").  The affirmative defense of estoppel is broader in scope, and applies where a

party should be barred from proceeding because of reliance by an opposing party on a

representation made by the party to the opposing party.  *Kosakow v. New Rochelle*

*Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001) (equitable estoppel is "properly

invoked where the enforcement of the rights of one party would work an injustice upon

the other party due to the latter's justifiable reliance upon the former's words or

conduct."); Black's Law Dictionary at 570.  The affirmative defense of waiver involves a

wide variety of possible applications, but generally involves the voluntary and intentional

relinquishment of a known right.  *See Beth Israel Med. Ctr. v. Horizon Blue Cross and*

*Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (waiver is "voluntary

10

abandonment or relinquishment of a known [contract] right which, but for the waiver, would have been enforceable.") (citing *Jefpaul Garage Corp. v. Presbyterian Hosp.*, 462 N.E.2d 1176 (N.Y. 1984)); *In re Antonia E.*, 838 N.Y.S.2d 872, 877-78 (N.Y. Fam. Ct. 2007) (same, citing cases); Black's Law Dictionary at 1574.

The purpose of the FDCPA is "to protect consumers from harassing and unscrupulous practices of certain debt collectors, including use of deceptive or misleading representations in effort [*sic*] to collect debt," 41 AM. JUR. 3D 159 *Proof of Facts* § 2 (2008). A FDCPA claim "has nothing to do with whether the underlying debt is valid," but "concerns the method of collecting the debt." *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D. Fla.), *aff'd*, 66 F.3d 342 (11th Cir. 1995), *cert. denied*, 516 U.S. 1048 (1996); *see also Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) (plaintiff's claim that debt was invalid irrelevant to FDCPA claim). Asserting an affirmative defense of accord and satisfaction against an FDCPA claim, then, is futile, as the settlement of a debt between Plaintiff and Defendant, if such accord and satisfaction is found to have occurred, is inapposite to the question at issue in this case, which is whether Defendant's debt collection practices alleged by Plaintiff violated the FDCPA. *See Karnette v. Wolpoff & Abramson*, L.L.P., 2007 WL 922288, at * 11 (E.D.Va. March 23, 2007) (defense of accord and satisfaction inapplicable to a FDCPA claim because FDCPA claims "focus on the misconduct of the debtor," not "the existence, or amount, of any debt that the debtor might owe.") (citing *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998)). Similarly, assuming Plaintiff succeeds at trial on the merits of her FDCPA claims against Defendant, even if Defendant could demonstrate a merger of Michael

Herman's debt into a settlement agreement between Plaintiff, as Michael Herman's

agent, and Defendant, providing for a reduction of the debt, Defendant's proposed

affirmative defense of merger does not destroy Plaintiff's federal claims as alleged in

this action.  Accordingly, the court finds that Defendant's proposed defenses of merger

and accord and satisfaction, which, by their terms can relate only to the enforcement of

the underlying debt allegedly owed by Michael Herman, are wholly irrelevant to the

potential merits of Plaintiff's FDCPA claim.  For the same reason, such proposed

affirmative defenses cannot affect the merits of Plaintiff's state law claim of intentional

infliction of emotional distress as the defenses can bar only an action to enforce a

contract, and are thus inapplicable to a tort claim.  Therefore, these two proposed

defenses are futile as a matter of law and Defendant's motion directed to such

defenses is therefore DENIED.

However, as to Defendant's proposed defenses of waiver and estoppel, Plaintiff

cites to no caselaw holding that such defenses can, as a matter of federal common law,

never bar an FDCPA and state tort claim, and the court's research has revealed none.

Moreover, the parameters of these affirmative defenses are broad enough to potentially

cover a situation where a debt collector and a consumer, or other party, like the

Plaintiff, contacted by a debt collector as Plaintiff asserts NES did in this case, are

alleged by a defendant to have engaged in a transaction with defendant whereby such

other party has agreed to waive any rights to sue for violations of the FDCPA,

presumably in exchange for some consideration, such as a reduction of the underlying

debt, or has made representations to the defendant debt collector upon which the debt

collector relied to its detriment with regard to the plaintiff's previously stated intention to

commence an action under the FDCPA or for a related state law tort claim.  In this action, based on Plaintiff's factual allegations, it is difficult to imagine how Plaintiff's conduct could conceivably cause Defendant to rely to its detriment on Plaintiff's statements and actions in response to Defendant's collection activities.  However, in the absence of applicable federal or state caselaw indicating such defenses are irrelevant to Plaintiff's FDCPA and state tort law claims, the court cannot conclude, at this early stage of the litigation, that such defenses inevitably will prove futile as a matter of law. Accordingly, Defendant's Motion to amend to add waiver and estoppel as affirmative defenses in this action is GRANTED.

## II.    Motion to Strike Affirmative Defenses

In addition to objecting to Defendant's request to add additional affirmative defenses by amending its Answer, Discussion, *supra*, at 7-12, Plaintiff's Cross-Motion seeks to strike seven of Defendant's affirmative defenses, specifically that (i) Plaintiff lacks standing to sue (Answer ¶ 75); (ii) Plaintiff is not the proper party to assert the claims alleged in the Complaint (Answer ¶ 76); (iii) Plaintiff failed to state a claim upon which relief can be granted (Answer ¶ 78); (iv) Defendant acted in good faith reliance on information provided by the creditor of the account (Answer ¶ 79); (v) Plaintiff did not justifiably rely on any alleged false or misleading representation (Answer ¶ 82); (vi) Plaintiff's claims are barred by the doctrine of unclean hands (Answer ¶ 83); and (vii) Plaintiff's claims are barred by privilege, absolute privilege and/or qualified privilege. (Answer ¶ 84).

Fed.R.Civ.P.12(f) provides, in relevant part, "that 'the court may order stricken from any pleading any insufficient defense or any redundant, . . ..'" *United States v. Green*, 33 F.Supp.2d 203, 212 (W.D.N.Y. 1998).  "In the Second Circuit, motions to strike affirmative defenses under Fed.R.Civ.P. 12(f) for being legally insufficient are disfavored, and will only be granted if it 'appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'"  *Cattaraugus County Project Head Start v. Executive Risk Indem., Inc.*, 2000 WL 1737943, at *2 (W.D.N.Y. Nov. 8, 2000) (citing *William Z. Salcer*, *Etc. v. Envicon Equities,* 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds and remanded*, 478 U.S. 1015 (1986)).  To prevail on a motion to strike, a plaintiff must satisfy a three-part test

> First, there may be no question of fact which might allow the defense to succeed. Second, there may be no substantial question of law, a resolution of which could allow the defense to succeed.  Third, a plaintiff must show that it is prejudiced by the inclusion of the defense.

*County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

"In deciding whether to strike a Rule 12(f) motion . . .  it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible."  *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) (citing cases).  "Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing."  *Green*, 33 F.Supp.2d at 212 (citing *Lipsky, supra*).  Each of Defendant's affirmative defenses challenged by Plaintiff is considered

14

in turn.

##### A.  Standing

Defendant has alleged that Plaintiff lacks standing to assert the claims alleged in the Complaint because Plaintiff is not a "consumer" as defined by the FDCPA.  Answer ¶ 75.  NES further seeks to defend against Plaintiff's FDCPA claims on the basis that even if Plaintiff has standing under the FDCPA, she has no standing to bring claims on behalf of her son or any alleged harm that NES allegedly caused him.  Defendant's Memorandum at 2-3 ("[I]t is axiomatic that an individual does not have standing to make claims for another person.").  Plaintiff contends that debt collectors may be liable to consumers and non-consumers like Plaintiff under the FDCPA and, as such, Plaintiff has standing to sue.  Plaintiff's Memorandum ¶ 1.

"'[A]ny person who comes in contact with the proscribed debt collection practices may bring a claim under certain sections of the FDCPA.'" *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 2000 WL 1448635, at * 4 (S.D.N.Y. Sept. 28, 2000) (underlining added); *see Montgomery v. Huntington Bank*, 346 F.3d 693, 696-97 (6th Cir. 2006) (non-consumer has standing to sue under §§ 1692(d), (e)); *Eley v. Evans*, 476 F.Supp.2d 531, 32-33 (E.D.Va. 2007) (non-consumer has standing to sue under §§ 1692(d), (e) & (f)).  Moreover, this court has specifically stated that

> Civil liability arises under FDCPA whenever '*any* debt collector who fails to comply with *any* provision of this subchapter with respect to *any* person is liable to such person . . ..  Recovery is not limited to "consumers" as defined at 15 U.S.C. § 1692(a)(3) as 'any natural person obligated or allegedly obligated to pay any debt.'  Any person who comes in contact with proscribed debt collection practices may bring a claim.

15

*Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 175 (W.D.N.Y. 1988) (administratrix of estate who received defendant's collection letters had standing under 15 U.S.C. § 1692) (italics in original) .

Here, Plaintiff alleges, in Count I of the Complaint, that NES and Michael Doe violated 15 U.S.C §§ 1692(d), (d)(2) (which prohibit abusive and harassing debt collection practices, including the use of profane or obscene language); §§ 1692(e), (e)(4), (e)(5), (e)(7), (e)(10) (which prohibit false or misleading representations by debt collectors); and § 1692(f) (which prohibits debt collectors from using unconscionable means to collect a debt), by telling Plaintiff during telephonic communications that, *inter alia*, "she did not love her son, that her son was going to be arrested, that her son was going to be demoted, and that her son would receive a dishonorable discharge." Complaint ¶ 60.  Additionally, Defendant does not dispute that it negotiated with Plaintiff through Michael Doe and Raymond Doe for a repayment of her son, Michael's, debt. Thus, Plaintiff has alleged sufficient contact with Defendant and Defendant's proscribed debt collection practices alleged by Plaintiff and, as such, Plaintiff has standing to sue. *See Sibersky*, 2000 WL, at * 4.  Accordingly, if Plaintiff succeeds at trial on Plaintiff's FDCPA claim, this affirmative defense will not bar Plaintiff's recovery and thus will be of no legal consequence.  Plaintiff's Cross-Motion to strike this affirmative defense, Answer ¶ 75, therefore should be GRANTED.

## B.    Proper Party

As discussed, Discussion, *supra*, at 14-15, Plaintiff has standing to sue and is therefore a proper party to assert claims alleged in the Complaint.  Defendant's

affirmative defense that Plaintiff is not the proper party to assert claims alleged in the Complaint is thus equally meritless and redundant, and, as such, Plaintiff's Cross-Motion to strike this affirmative defense, Answer ¶ 76, should also be GRANTED.

### C.    Failure to State a Claim

Plaintiff asserts a federal claim pursuant to the FDCPA, specifically, 15 U.S.C. §§ 1692d, 1692e, and 1692f, and a state common law tort claim for intentional infliction of emotional distress.  Plaintiff's Memorandum ¶ 6.  Defendant argues that its affirmative defense for failure to state a claim upon which relief can be granted should not be stricken because, as it relates to Plaintiff's FDCPA claim, "any alleged misrepresentation made in connection with attempts to collect on the debt affected Michael [Plaintiff's son, the debtor], not [Plaintiff]."  Defendant's Memorandum at 4 (bracketed material added) ("To the extent that [Plaintiff] alleges damages to her son Michael, she did not state a claim upon which she can recover").  Defendant does not address the application of this affirmative defense to Plaintiff's state common law intentional tort claim.  Accordingly, the court finds Defendant has conceded that Plaintiff's allegations are sufficient to state a claim for intentional infliction of emotional distress.  However, even if Defendant had argued Plaintiff failed to state a claim for intentional infliction of emotional distress,  absent a showing of prejudice to Plaintiff, it is premature to strike Defendant's affirmative defense for failure to state a claim as to Plaintiff's state tort claim.  *Goodson*, 2008 WL, at * 1.

"Including failure to state a claim as an affirmative defense is a 'routine practice which is rarely, if ever, stricken by the court as legally insufficient' and, indeed, is often

considered 'invulnerable as against the motion.'" *Cattaraugus County Project Head Start*, 2000 WL1737943, at *3 (citing *Almy Brothers Inc. v. McMahon*, 971 F.Supp. 69, 72 (N.D.N.Y. 1997)).  In addition to establishing that the defense is legally insufficient, "the moving party must also show that it would be prejudiced if the defense were to remain in the pleading.  *E.E.O.C. v. SSM & RC Inc.*, 2007 WL 1613580, at *1 (W.D.N.Y June 1,  2007).  "Where a defense must fail as a matter of law, its inclusion prejudices the plaintiff because it will increase the duration and expense of trial." *United States v. Manhattan-Westchester Med. Servs., P.C.*, 2008 WL 241079, at * 3 (S.D.N.Y. Jan. 28, 2008) (citing *SEC v. Toomey*, 866 F.Supp. 719, 725 (S.D.N.Y. 1992)).  "Even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits."  *Goodson v. Willard Drug Treatment Campus DOC,* 2008 WL 850338, at * 1 (W.D.N.Y. March 28, 2008) (citing *William Z. Salcer, Etc.,* 744 F.2d at 1).

In this case, Plaintiff contends that "all of the essential elements [of the federal claim] under the statute have been alleged" in the Complaint, specifically

> 1) that NES is a "debt collector" as defined by 15 U.S.C. § 1692a(5)[7] (Complaint ¶¶ 7, 12, 15, 18, 19), 2) that NES was attempting to collect a "debt" as that term is defined by 15 U.S.C. § 1692a(5) (Complaint ¶¶ 15, 17, 20[8]), 3) that NES violated

---

[7] The term "debt collector" is actually defined in 15 U.S.C. § 1692a(6).

[8] Paragraph 22 of the Complaint also states "[t]hat beginning in approximately December of 2006, NES began calling Plaintiff multiple times virtually every day in an attempt to collect on the subject debt."

18

> multiple provisions of the FDCPA,[9] and 4) that Plaintiff
> suffered damage as a result of said violations
> (Complaint ¶¶ 55, 68)).

Plaintiff's Memorandum ¶ 2 (bracketed material added).

As just discussed, *supra*, n. 9, Plaintiff alleges several violations of the FDCPA.

Complaint ¶¶ 59-67.  Based on the facts alleged in the Complaint, Plaintiff sufficiently

alleges that Defendant NES is a debt collector within the meaning of the statute, and

that NES and/or its agents, Michael and Richard Doe, telephoned Plaintiff repeatedly

with intent to annoy, abuse and/or harass Plaintiff.  Complaint ¶ 58.  Thus, these

asserted facts sufficiently allege a violation of § 1692d(5) which prohibits such conduct.

Although, Plaintiff has not yet established she has been prejudiced at this point in the

litigation by Defendant's continued assertion of such defense, *SSM & RC Inc.*, 2007

WL, at *1, it is too early in the case to entertain a motion to strike a defense asserting

Plaintiff's  failure to state a claim.  Rather, determination of the merits of such

affirmative defense should await a motion pursuant to Fed.R.Civ.P. 12(b)(6).  As such,

Plaintiff's motion to strike this affirmative defense directed to Plaintiff's federal FDCPA

claims should be DENIED.

### D.   Good Faith Reliance Defense

Defendant has, as noted, withdrawn its proposed affirmative defense asserting

that NES acted in good faith reliance on information provided to it by the creditor or

original creditor of the account.  Defendant's Memorandum at 4.  As such, Plaintiff's

---

[9] In paragraphs 59-67 of the Complaint, Plaintiff alleges that Defendants NES, Michael Doe and/or Raymond Doe, individually and/or together violated 15 U.S.C. §§1692d, d(2), d(5), d(6), e, e(2), e(4), e(5), e(7), e(10), e(14), f, f(1), f(2), f(4) and k.

Cross-Motion to strike this affirmative defense should be DISMISSED as moot.

### E.   Justifiable Reliance on False or Misleading Representation

Defendant's ninth affirmative defense states that Plaintiff did not justifiably rely

on Defendant's alleged false representations because, according to Defendant, the

checking account belonged to Plaintiff's son, and thus Plaintiff could not have been

harmed by any alleged false representations made by Defendant.  Answer ¶ 82;

Flascher Affidavit Exh. A at 6; Defendant's Memorandum at 4.  Plaintiff contends such

defense is therefore irrelevant to Plaintiff's FDCPA claim.  Plaintiff's Memorandum ¶ 4

(citing *Jackson v. Nat'l Action Fin. Sys., Inc.,* 227 F.R.D. 284, 289 (N.D.Ill. 2005)).

Specifically, according to Defendant, Plaintiff, in alleging that Defendant violated

§§ 1692e, 1692f(2), and 1692f(4), which prohibit "false or misleading representations"

and "unfair practices,"[10] because the checking account at issue was not Plaintiff's, could

not have relied on Defendant's alleged representations, and thus no harm actionable

under these provisions could have accrued to Plaintiff.  Defendant's Memorandum at 4.

However, as discussed, Discussion, *supra*, at 15, although 15 U.S.C. § 1692e(2)(A)

prohibits a debt collector from using "false, deceptive or misleading representation[s] or

means in connection with the collection of any debt," *Harrison v. NBD Inc.*, 968 F.Supp.

837, 848 (E.D.N.Y. 1997), there is no requirement that a plaintiff suing to enforce the

FDCPA prove he relied to his detriment upon a debt-collector defendant's

---

[10] Such deceptive practices include a debt collector's acceptance, from any person, of a payment instrument post-dated by more than five days, "unless such person is notified in writing of the debt collector's intent to deposit such . . . instrument not more than ten nor less than three business days prior to such deposit," and "[d]epositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument," 15 U.S.C. §§ 1692e, f(2) and f(4).

misrepresentation in order to establish a violation of §§ 1692e or 1692f.  *Sokoloski v. Trans Union Corp.*, 53 F.Supp.2d 307, 316 (E.D.N.Y. 1999) (citing *Berrios v. Sprint Corp.,* 1998 WL 199842, at *4 (E.D.N.Y. March 16, 1998) (plaintiff who has not relied to her detriment on misleading letter from debt collector may recover under FDCPA but not under New York General Business Law Section 349))*; see also Jackson*, 227 F.R.D. at 288 (unsophisticated consumer standard "is not dependent upon actual reliance by the plaintiff.") (citing *Sledge v. Sands,* 182 F.R.D. 255, 258 (N.D.Ill. 1998)). If a plaintiff proves that the tactic or communication at issue was either a false or misleading representation as defined by §§ 1692e(1) - (16), or constituted an unfair collection practice within the scope of § 1692f(1) - (8), such conduct is actionable regardless of the consumer-plaintiff's reliance, or lack thereof.  *Sokoloski*, 53 F.Supp.2d at 316; *see also Teng v. Metro Retail Recovery Inc.*, 851 F.Supp. 61, 65 (E.D.N.Y. 1994) ("*any* false, deceptive or misleading representation in a collection telephone call violates section 1692e").

Here, Plaintiff alleges several communications and actions by Defendant which, if true, could be found by a reasonable juror to constitute a violation of § 1692f(10), *i.e*., using "any false representation of deceptive means to collect" the debt at issue.  15 U.S.C. § 1692e(10).  Specifically, Plaintiff alleges, Complaint ¶¶ 34-37, that despite Defendant's oral agreement with Plaintiff, the initial payment of $300 would not be withdrawn from Plaintiff's son's account before May 1, 2007, Defendant nevertheless began withdrawing from Michael's account on April 24, 2007, and again on April 30, 2007, placing the account in an NSF status by depleting it sooner than Plaintiff had

expected based on the agreement.  Based on such facts, if proven, a reasonable juror could find Defendant did not intend to act in accordance with its agreement with Plaintiff and therefore had engaged in a "false representation."  The fact, relied upon by Defendant as the basis for this affirmative defense, that the checking account was Michael Herman's, and not Plaintiff's, is irrelevant to a jury finding that such statements, directed to Plaintiff, were untrue or deceptive or both when made to Plaintiff.  Thus, if Plaintiff established this violation of the FDCPA, Defendant's affirmative defense based on lack of reliance will not defeat Plaintiff's claim.  Additionally, Plaintiff alleged that Defendant Michael Doe stated to Plaintiff that unless the debt was paid, Plaintiff's son would be "arrested" upon his return to the United States following his tour of duty in Iraq.  Complaint ¶ 31.  Although it is unlikely that such an assertion, if established by Plaintiff at trial, could be true, whether Plaintiff relied on it, *i.e.*, believed it was true, is irrelevant to Plaintiff's FDCPA claim as a consumer's reliance on the alleged misrepresentation is not an element of a violation of the FDCPA, *Jackson,* 227 F.R.D. at 288; *Sokoloski*, 53 F.Supp.2d at 316.  Additionally, Plaintiff's allegations, Complaint ¶¶ 31-34, are sufficient to support a finding that Defendant violated § 1692f(2), which prohibits presenting a post-dated payment instrument without providing written notice to the debtor of such transaction of not more than 10 nor less than five days.  Here, based on Plaintiff's allegations, Complaint ¶¶ 31-34, NES failed to comply with these requirements with regards to its successful and attempted withdrawals from Michael Herman's account.  Therefore, Plaintiff's allegations, if proven, may establish NES's violation of § 1692f(2), and NES's affirmative defense will not avoid liability under the FDCPA.

22

Plaintiff further argues that whether Plaintiff justifiably relied on the alleged false or misleading representation is immaterial to Plaintiff's state tort claim, as reliance is not an element of that cause of action.  Plaintiff's Memorandum ¶ 4.  As reliance by a plaintiff upon a tortfeasor's conduct, by definition, is not an element of Plaintiff's state common law tort claim, *Deal v. Seneca County*, 2008 WL 2020004, at * 8 (W.D.N.Y. May 8, 2008) (elements of intentional infliction of emotional distress claim include (i) "extreme and outrageous conduct; (ii) intent to cause . . . severe emotional distress;" (iii) conduct which causes the injury; and (iv) "severe emotional distress"), the defense is irrelevant  to that claim as a matter of law.  Defendant cites to no New York caselaw recognizing that a victim's "reliance" or belief in the truth or falsity of a tortfeasor's outrageous utterances establishes an affirmative defense to this tort.  Moreover, the notion that liability for this intentional tort may be defeated by establishing that the victim did not rely upon the tortfeasor's misconduct or believe the tortfeasor's representations reduces itself to an argument on the issue of causality, not an affirmative defense which by its nature assumes that the victims' claim has been established.  *See Harrington*, 2002 WL1009463, at *2.  Plaintiff's Cross-Motion to strike this affirmative defense should therefore be GRANTED.

### F.    Unclean Hands

Defendant's tenth affirmative defense asserts that Plaintiff's claims are barred by the doctrine of unclean hands, although Defendant concedes that outstanding responses to written discovery requests are needed in order to prove this defense.  Answer ¶ 83; Defendant's Memorandum at 4-5.  Plaintiff argues that the doctrine of

unclean hands is "a creature of state law" and, as such cannot be asserted as to the FDCPA claim.  Plaintiff's Memorandum ¶ 5 (citing *Mejia v. Marauder Corp.*, 2007 WL 806486, at * 5 (N.D.Cal. March 15, 2007)).  In relation to Plaintiff's state claim, Plaintiff asserts there is no basis for the unclean hands defense because Plaintiff did nothing wrong.  Plaintiff's Memorandum ¶ 5.

The doctrine of unclean hands holds "that a court's <u>equitable</u> powers 'can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.'"  *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,* 2006 WL 3342655, at * 1 (S.D.N.Y. Nov. 16, 2006) (underlining added) (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 249, 241 (1933)).  Unclean hands "must involve a party's 'inequitableness or bad faith *relative to the matter in which he seeks relief,*' which can be 'any willful act *concerning the cause of action.*'"  *Id.* at 2 [italics in original].

Here, a careful reading of the Complaint reveals Plaintiff seeks only money damages as available under the FDCPA and Plaintiff's state law tort claim.  Complaint ¶ 72(1) - (4).  As Plaintiff does not seek equitable relief, Defendant's unclean hands affirmative defense is wholly irrelevant to any of Plaintiff's claims for relief, and cannot defeat Plaintiff's claim for monetary relief.  As such, Plaintiff's Cross-Motion directed to it should therefore be GRANTED.

### G.   Privilege, Absolute Privilege, and/or Qualified Privilege

In paragraph 85 of the Answer, Defendant asserts "Plaintiff's claims are barred by privilege, absolute privilege, and/or qualified privilege."  Answer ¶ 85.  Specifically,

Defendant contends that, under 15 U.S.C. ¶ 1692b(1), a debt collector is privileged to disclose information to persons other than the debtor, including family members of the debtor.  Defendant's Memorandum at 5.  Defendant argues that, as Plaintiff's son authorized Plaintiff to discuss the debt with Defendant, Plaintiff's claims are barred by privilege.  However, a fair reading of the Complaint demonstrates that Plaintiff does not charge Defendant with a violation of the FDCPA based on Defendant's unauthorized communication with Plaintiff as the debtor's mother, rather than with the debtor himself who was then on military duty in Iraq.  Instead, Plaintiff has asserted numerous violations of the FDCPA based on Defendant's misconduct prohibited by the FDCPA and directed to Plaintiff as a person protected by the FDCPA against such misconduct.  Discussion, *supra,* at 15-16.  Defendant also fails to explain how such misconduct may be considered as privileged under New York law so as to avoid tort liability for intentional infliction of emotional distress as alleged by Plaintiff.  Accordingly, this affirmative defense, even if established by Defendant at trial, has no relevance to any claim, federal or state, cannot defeat any claim Plaintiff is asserting, and, as such, Plaintiff's Cross-Motion to strike this affirmative defense should be GRANTED.

### H.    Laches

Defendant has withdrawn its affirmative defense asserting that Plaintiff's claims are barred by the doctrine of laches, Defendant's Memorandum at 7; therefore, Plaintiff's Cross-Motion to strike this defense should be DISMISSED as moot.

**CONCLUSION**

Based on the foregoing, Defendant's Motion (Doc. No. 14) is GRANTED in part,

DENIED in part, and DISMISSED in part, as moot.  Plaintiff's Cross-Motion (Doc. No.

16) should be GRANTED in part, DENIED in part and DISMISSED as moot in part.


SO ORDERED, as to Defendant's Motion,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Plaintiff's Cross-Motion to Strike,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 10, 2008
           Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Ordered.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        September 10, 2008
              Buffalo, New York